IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Walker D. Miller

Civil Action No.   03-cv-280-WDM-MJW

OLOYEA D. WALLIN,

      Plaintiff,

v.

MS. HILL, et al.,

      Defendants.

---

## ORDER ON RECOMMENDATION OF MAGISTRATE JUDGE

---

Miller, J.

      This matter is before me on the recommendation of Magistrate Judge Michael J. Watanabe, issued January 20, 2005, as well as various objections and nondispositive motions by Plaintiff Oloyea Wallin (Wallin).  Having been granted two extensions of time, Wallin filed timely objections to the recommendation, and is entitled *de novo* review.  28 U.S.C. § 636(b).

      I have reviewed the recommendation, objections, motions and responses and conclude the recommendation should be accepted as modified herein.

<u>Background</u>

      The undisputed facts are as follows.  During the relevant time period, Wallin was an inmate at the Kit Carson Correctional Center (KCCC).  KCCC is a privately-owned prison run by the Correctional Corporation of America (CCA), pursuant to a

contract with the Colorado Department of Corrections (CDOC).

Wallin suffers from a sensitive skin condition, producing redness, itchiness, bumpiness, and sometimes scarring.  Prior to his incarceration, he dealt with his skin condition by keeping his body clean and moisturized, using "dermatology products," and by wearing undergarments made out of certain materials, such as silk, satin, polyester, "virgin cotton", etc., that he bought especially for his condition, and which he describes as his "medical clothing."  (Wallin Dep., Vol. I, at 93-95, 104)

Shortly before being incarcerated at KCCC, Wallin was housed at a community corrections center, where he was able to wear his own medical clothing.  He was transferred to the Arapahoe County Jail for 30 days, and then to the Denver Reception and Diagnostic Center (DRDC).  At the DRDC, he was issued prison undergarments, which he brought along with him when he was transferred to KCCC.

On February 11, 2002, Wallin received a notice from the KCCC mailroom that he had received a package from the community corrections center, which he believed contained his medical clothing.  The mailroom clerk told Wallin he could not obtain the package without first getting a prescription from the medical department, which he attempted to do.  On March 28, 2002, defendant Nurse Hill signed and provided him with a slip[1] that stated: "Please allow to wear medical whites under green scrubs due to allergic reaction to laundry detergent and fabric of scrubs."  (Pl.'s Obj., Ex. 1.) However, in an affidavit, Hill asserts that she provided the slip based on Wallin's representations that he had permission from a past medical facility to wear "medical

---

[1]The defendants characterize the document as a "duty slip," while Wallin refers to it as a "prescription."

whites" and that he had the medical whites in his property; had she known the undergarments had been shipped into the facility from outside, she would not have signed the document based on prison policy.  (Hill Aff., ¶ 2-3.)

Wallin took the slip to the mailroom to obtain his clothing.  However, mailroom staff still refused to provide his package, according to Wallin's complaint, because defendant Assistant Warden Sloan (Sloan) so instructed them.  Although subsequently Wallin contacted each of the defendants at various times regarding his need for the clothing, none of them remedied the situation.

While at KCCC, Wallin suffered from pain, itching, discomfort, and bleeding from his condition.  Although he never was allowed access to his medical clothing, he was provided with other medical treatment for his skin condition including prescribed creams, ointments, pills, prescription medication, as well as a special detergent with which to wash his clothes.  (Wallin Dep. Vol. II, at 8.)

Wallin has since left KCCC, and been transferred to the Huefano County Correctional Facility, the Arapahoe County Jail, DRDC, and finally the Arkansas Valley Correctional Facility.  Wallin has not been provided with medical clothing at any of these other facilities.

Wallin subsequently filed suit in this court, asserting claims based the denial of access to his medical clothing against Ms. Bair (program manager at KCCC), Mr. Bongirno (CDOC liaison), Mr. H. Brill (Warden at KCCC), John Doe (CCA executive director), Edd Gillespie (former CDOC Step 3 Grievance officer), Hill, Joe Ortiz (CDOC executive director), Mr. Saffer (case manager at KCCC), Sloan, and Ms. Wederski (head of the medical department at KCCC).  Wallin's amended complaint asserts

3

three claims: (1) inadequate or lack of medical care in violation of the Eighth

Amendment, brought pursuant to 42 U.S.C. § 1983; (2) infliction of emotional distress

under Colorado law; and (3) negligence under Colorado law.

Recommendation

The "CCA Defendants,"[2] the "CDOC Defendants,"[3] and Gillespie have all

moved separately for summary judgment, which motions I referred to Magistrate

Judge Watanabe to pursuant to 28 U.S.C. § 636(b)(1).  Magistrate Judge Watanabe

issued a recommendation on January 20, 2005, prior to Wallin filing responses to any

of the motions.[4]  Therein, he recommended that Wallin's Eighth Amendment claim

(claim one) be denied because (1) at worse, the defendants' conduct resulted in a

delay in treatment, which did not cause Wallin substantial harm; (2) the defendants

provided treatment for Wallin's condition, and therefore did not act with deliberate

indifference; (3) Wallin provided no evidence regarding the individual defendants'

conduct which could result in their liability; (4) as to the CDOC Defendants, Wallin

failed to exhaust his administrative remedies as required under the Prison Litigation

---

[2]These defendants are Bair, Brill, Hill, Saffer, Sloan, and Wederski.

[3]These defendants are Bongirno, CDOC, and Ortiz.  It is not clear whether the CDOC is a defendant in this action.  The amended complaint does not list it as a party in the caption or the "parties" section; however, there is an allegation that CDOC failed to provide an adequate medical system under claim one.  (Amd. Compl., ¶ 11.)

[4]The CCA Defendants' motion was filed October 25, 2004, the CDOC's motion was filed November 26, 2004, and Gillespie's motion was filed December 13, 2004. Magistrate Judge Watanabe granted Wallin's motion for an extension of time to respond to the CCA Defendants' motion through December 15, 2004.  Additional motions for extensions were pending when Magistrate Judge Watanabe issued his recommendation, which he denied as unwarranted the following day.

Reform Act (PLRA); (5) Wallin provided no evidence that he suffered a physical injury as required under the PLRA; and (6) the CDOC Defendants are entitled to qualified immunity.  He also recommended that the intentional infliction of emotional distress claim (claim two) must fail because Wallin provided no evidence which could show that the defendants committed outrageous conduct, and that the negligence claim (claim three) be dismissed because the defendants were under no duty with regards to his request for his clothing.  Additionally, he found that the CCA Defendants were entitled to immunity under the Colorado Governmental Immunity Act (CGIA), and that Wallin failed to provide timely notice under the CGIA.  Finally, he recommended in the alternative that I not exercise supplemental jurisdiction over the state law claims.

Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  The nonmoving party must set forth facts showing that there is a genuine issue for trial.  The court views the record in the light most favorable to the party opposing the summary judgment motion.  *Cummings v. Norton*, 393 F.3d 1186, 1189 (10th Cir. 2005).  A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986).

Discussion

Wallin first objects that the defendants' failures to provide discovery, permitted by Magistrate Judge Watanabe's erroneous rulings on discovery matters,  prevented Wallin from being able to effectively defend his claims with evidence.  Wallin asserts

that he must be allowed to defend against the defendants' motions with the allegations in his complaint in addition to Rule 56(e) evidence.

Wallin is entitled to discovery sufficient to allow him a fair trial. *Handy v. Price*, 996 F.2d 1064, 1068 (10th Cir. 1993). Furthermore, a "district court may treat a verified complaint as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56(e)." *Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1019 (10th Cir. 2002). Nonetheless, accepting that Wallin may rely on his complaint, I do not find that Magistrate Judge Watanabe's discovery orders require me to reject his recommendation.

First, I do not find that Wallin's objections to Magistrate Judge Watanabe's discovery orders should be sustained. Because discovery orders concern nondispositive matters, my review is limited to determining whether they were clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A). Under this standard, I must affirm unless I am "left with the definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp. v. Sparrow Industries*, 847 F.2d 1458, 1464 (10th Cir. 1988). The relevant objections made by Wallin as to discovery orders are as follows.

Wallin filed an objection (Docket # 188) to Magistrate Judge Watanabe's October 5, 2004 minute order denying Wallin's motion to compel the CDOC Defendants to produce documents. He first argues that the CDOC Defendants should be required to "produce" his medical and dental records, apparently meaning that they should be ordered to deliver copies to him. Magistrate Judge Watanabe found that the CDOC Defendants had made such records available for him to view and copy, and that they were not required to provide such materials at their own

6

expense.  Wallin provides no authority contradicting this finding, but merely asserts

that he expects CDOC to hinder  his efforts to obtain the documents.  Such does not

convince me there was clear error.

He also argues that the CDOC Defendants should have been ordered to

produce grievance logs or records from lawsuits relating to the Kit Carson

Correctional Center and concerning "1) medical 2) staff/officers 3) excessive force 4)

confiscations-deprivations, and 5) Officer Dycus,"[5]  (Mot. Compel CDOC Defs., ¶ 2,) as

well as employee disciplinary records, and job descriptions.  Magistrate Judge

Watanabe found the request overly broad, vague, unduly burdensome, and not

reasonably calculated to lead to the discovery of admissible evidence, and noted that

the CDOC Defendants asserted that CDOC had no job descriptions.  Wallin argues

that such discovery could be provided easily, is relevant by allowing him to establish

the habit and/or routine practice of defendants, and questions the credibility of

CDOC's assertion that no job descriptions exist.

"A litigant who seeks to overturn a magistrate's discovery order bears a heavy

burden."  *Empire Volkswagen, Inc. v. World-Wide Volkswagen Corp.*, 95 F.R.D. 398,

399 (D.C.N.Y. 1982).  *See also Smith v. MCI Telecom. Corp.*, 137 F.R.D. 25, 27 (D.

Kan. 1991) ("[b]ecause a magistrate is afforded broad discretion in the resolution of

nondispositive discovery disputes, the court will generally grant the magistrate great

deference").  Wallin's arguments do not leave me with the definite and firm conviction

that a mistake has been committed, and accordingly, I affirm.  *See Ocelot Oil Corp.*,

---

[5]Officer Dycus is a party in one of Wallin's other cases filed in this court.

7

847 F.2d at 1464.

Wallin filed an objection (Docket # 192) to the denial of his motion to compel the CCA Defendants to produce documents regarding lawsuits and grievances, employee disciplinary records, etc.  The CCA Defendants disputed that they had received the relevant requests for production of documents.  Magistrate Judge Watanabe denied the motion because Wallin had failed to comply with D.C.COLO.LCivR 7.1A prior to filing the motion.  In his objections, Wallin admits that he failed to comply with the local rule, but notes that on October 7, 2004, after his motion had already been denied, he filed a motion to amend his motion to compel and several other motions to add his certification as required by the local rule. Especially in light of the enormous number of motions Wallin files, I cannot find clear error in the fact that Magistrate Judge Watanabe did not sua sponte revisit his October 5, 2004 minute order after receiving Wallin's October 7 filing.  Wallin cannot complain under these circumstances that Magistrate Judge Watanabe never reached the merits of his motion.[6]

Wallin next filed an objection (Docket # 195) to Magistrate Judge Watanabe's decision to grant the CCA Defendants' motion for a protective order regarding interrogatories addressed to defendant John Doe, the executive director of CCA (Doe).  Based on Wallin's failure to attempt to identify and serve Doe until after the pleading amendment deadline had passed, Magistrate Judge Watanabe ordered in

_____

[6]Additionally, Wallin provides no convincing evidence that the CCA Defendants are misrepresenting the truth when they assert that they never received the requests for production at issue, thereby failing to demonstrate clear error.

his October 5, 2004 minute order that the CCA Defendants need not respond to any interrogatories addressed to Doe.

Wallin asserts that he had sought the identity of Doe through informal discovery; however, the CCA Defendants deny this assertion, and Wallin provides no evidence allowing me to find clear error.  Wallin also argues that the CCA Defendants were required to provide Doe's name and address as part of their initial disclosures under Fed. R. Civ. P. 26(a)(1)(A), which requires each party to provide, without request, the name and contact information of "each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses."  Wallin's argument fails because the mandatory disclosure provisions set forth in Rule 26(a)(1) are inapplicable to a prisoner pro se case.  Fed. R. Civ. P. 26(a)(1)(E)(iii).

Although Wallin filed his amended complaint on March 30, 2004, service has yet to be effected on Doe.  *See* Fed. R. Civ. P. 4(m) (complaint may be dismissed if not served within 120 days after the filing of the complaint).  *See also Ketchum v. Albuquerque Police Dept.*, 9 F.3d 117, 1993 WL 445092, at **2 (10th Cir. Nov. 4, 1993) (unpublished table decision) (affirming amended complaint's dismissal without prejudice for failure to serve within 120 days).  Under these circumstances, Magistrate Judge Watanabe's determination that discovery was not proper against Doe is not clearly erroneous.  Even if the protective order may have been error there have been no allegations nor factual demonstration that any John Doe was guilty of a constitutional violation or outrageous conduct.  Accordingly this unnamed person should be dismissed for the reasons discussed infra, rendering this discovery issue

9

moot.

Wallin filed an objection (Docket # 217) to Magistrate Judge Watanabe's November 4, 2004 order denying Wallin's October 28, 2004 "Amended Motion to Compel CDOC Defendants to Answer First Set of Interrogatories."  Magistrate Judge Watanabe denied this motion based on my dismissal of all claims against the CDOC Defendants in a October 12, 2004 order.  However, Magistrate Judge Watanabe was mistaken; the October 12, 2004 order issued in a related case, 03-cv-174-WDM-MJW, and claims against CDOC Defendants remain pending in this case.  Consequently, the rationale of this order was in error.  However, because, as discussed below, I find that the error does not prevent me from granting the CDOC Defendants' motion, this objection will be overruled as moot.[7]

_____

[7]The following additional objections and nondispositive motions are also pending before me.

Wallin objected (Docket # 193) to the order granting of the CCA Defendants' second motion to compel, arguing Magistrate Judge Watanabe erred in deeming it confessed because Wallin had timely filed a motion for an extension of time to respond.  The motion was filed on August 27, 2004, and Magistrate Judge Watanabe extended the time for Wallin to respond to September 10, 2004, and granted the motion on October 5, 2004.  Wallin does not indicate when he filed his additional motion for extension of time.  In any case, Magistrate Judge Watanabe's order was also based on his finding that Wallin's objections to the CCA defendant's discovery requests were without merit, and Wallin does not argue that this determination was in error.

On October 28, 2004, Wallin filed an "Amended Objection to Order Denying Plaintiff's Motion Concerning Legal Access," which he subsequently asked me to consider as a motion to reconsider my October 21, 2004 order, which dealt with the same subject: the alleged denial of adequate access to facilities and materials necessary to prosecute his cases before me. The relevant background is as follows.

On June 18, 2004, Wallin filed a motion seeking an order directing the CDOC to provide him with adequate access to the law library and materials/photocopies necessary to prosecute his cases.  On August 24, 2004, Magistrate Judge Watanabe

denied the motion, finding that Wallin had established no basis for obtaining legal access privileges beyond that provided by CDOC regulations. Wallin objected to this order on the basis that Magistrate Judge Watanabe had ruled prior to receiving Wallin's reply brief, and I overruled the objection, finding that the local rules of this court entitled Magistrate Judge Watanabe to rule on a motion at any time after it was filed. *See* D.C.COLO.LCivR. 7.1C.

Wallin now seeks reconsideration of my order, making new arguments as to why Magistrate Judge Watanabe's August 24 order was in error. Courts generally construe a motion to reconsider that is filed within ten days after an order or judgment as a motion to alter or amend pursuant to Fed. R. Civ. P. 59(e). *Weitz v. Lovelace Health Sys., Inc.,* 214 F.3d 1175, 1178 (10th Cir. 2000). A Rule 59 (e) motion should be granted only to address (1) an intervening change in the controlling law; (2) new evidence previously unavailable; or (3) the need to correct clear error or prevent manifest injustice. *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). *See also Benne v. Int'l Bus. Machines*, 87 F.3d 419, 428 (10th Cir. 1996) ("A motion to reconsider under Rule 59(e) should only be granted to correct manifest errors of law or present new evidence") (internal quotations omitted). A Rule 59(e) motion is "not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Does*, 204 F.3d at 1012.

Here, Wallin raises a variety of arguments as to why the CDOC is not allowing him adequate access to materials and facilities to prosecute his cases. These arguments should have been raised in his original objection to Magistrate Judge Watanabe's order, and it is inappropriate to raise them in a motion for reconsideration. At any rate, taking judicial notice of the prodigious quantity of filings from Wallin in the three cases he has pending before me, I cannot find that Magistrate Judge Watanabe's determination that Wallin has adequate resources to prosecute his cases is clearly erroneous. Additionally, Wallin demonstrates no prejudice. For instance, to the extent this order dismisses some of Wallin's claims, my rationale is not dependent upon Wallin's failure–based on CDOC's refusal to allow him to make copies–to attach exhibits to his responses, or other reasons related to his asserted lack of legal resources. Accordingly, this motion will be denied.

Wallin objects to Magistrate Judge Watanabe's November 4, 2004 order granting the CCA Defendants' motion for sanctions for Wallin's failure to respond to certain discovery requests. However, in granting the motion, Magistrate Judge Watanabe did not actually impose sanctions, but merely imposed an additional deadline with the threat of sanctions for noncompliance. I find no clear error in the magistrate judge's order, and the objection will be overruled.

Wallin objects to Magistrate Judge Watanabe's denial of Wallin's motion for an extension of time to move to strike his deposition. Wallin asserts his deposition was

11

First, I agree with Magistrate Judge Watanabe that the Eighth Amendment

claim must fail because the evidence, undisputed by Wallin and consistent with the

allegations in is complaint, indicates that the defendants did not act with deliberate

indifference.

Prison officials violate a prisoner's Eighth Amendment rights "when they are

deliberately indifferent to the serious medical needs of the prisoners in their custody."

---

unfair because he was not provided the presumptive eleven-days notice and that he
was not provided a copy of the deposition to review.  In his motion for an extension of
time, Wallin asserted that he had 20 days to move to strike his deposition under "Fed.
R. Civ. P. ___", and consequently, Magistrate Judge Watanabe noted that Wallin had
provided no authority for his motion.  In any case, Wallin does not demonstrate that six
days notice left him with so little time to prepare for a deposition *of himself* as to
render it unfair; nor does he demonstrate, aside from conclusory assertions, that he
was prejudiced such that the deposition should be stricken.  Wallin's asserted
prejudice, with regards to reviewing the transcript, appears to be that he was not
provided a free copy that he could use substantively in this case.  The rules do not so
provide.  For the same reasons, Wallin's motion to strike the deposition (Docket #
234) and motion to compel the CDOC Defendants to provide a copy of the deposition
(Docket # 242) are denied, and Wallin's March 15, 2005 objections (Docket # 273) to
Magistrate Judge Watanabe's order denying similar motions (Docket # 253), are
overruled.

Additionally, Wallin argues in his March 15, 2005 objections (which dealt with
other discovery motions as well) that Magistrate Judge Watanabe based his January
21, 2005 minute order on mootness, denying the motions at issue because he had
already issued his recommendation on the substantive motions.  However, the order
plainly states that the motions were denied because Magistrate Judge Watanabe
found "no basis in law or fact" to grant any of the motions.  Wallin raises no
substantive arguments, and this objection will be overruled.

Also pending are four motions for extensions of time (Docket #s 224, 225, 226,
and 227) to file objections to orders of Magistrate Judge Watanabe denying Wallin's
motion to recuse, a motion for "excusable neglect," a motion for leave to allow
deposition by written interrogatories, and motion to allow Magistrate Judge Watanabe
to conduct depositions.  Having reviewed the order and the motions, I find no clear
error and therefore deny these motions for extension of time as moot.

*Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir.2001) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)).  Eighth Amendment claims alleging inadequate or delayed medical care thus involve both an objective and a subjective component, such that I "must determine both 'whether the deprivation is sufficiently serious' and 'whether the [government] official acted with a sufficiently culpable state of mind.'" *Id.* (*quoting Perkins v. Kansas Dep't of Corrections*, 165 F.3d 803, 806 (10th Cir.1999) (alteration in original).

Magistrate Judge Watanabe found both that the deprivation was not sufficiently serious, and that there was no evidence that defendants acted with deliberate indifference.  Wallin disputes these findings, first asserting that his "serious" skin condition was "diagnosed" by KCCC medical department, and that he was given a "prescription" for medical clothing.  However, at his deposition, he admitted that the "prescription" was the slip provided by Hill, which Hill avers that she provided based on Wallin's misrepresentations that he had been authorized to wear, and was provided with, "medical whites" at a prior facility.[8]

In any case, Wallin's main contention, that "[a]ll the defendants were aware of exacerbated skin condition but failed to do anything about it," (Pl.'s Obj., at 11,) must fail in light of Wallin's admission that, even if KCCC medical staff did not provide him

_____

[8]Wallin also provides the affidavit of a former cellmate, Bobby Mimms (the Mimms Affidavit), indicating that he observed the seriousness of Wallin's condition. Wallin did not timely provide this affidavit for Magistrate Judge Watanabe's consideration, and on that basis, I have the discretion to refuse to consider it.  *See United States v. Howell*,  231 F.3d 615, 621 (9th Cir. 2000).  In any case, even assuming the affidavit demonstrates a "serious medical condition," it does not, as discussed below, demonstrate a serious deprivation or deliberate indifference.

with his preferred treatment–i.e., use of his "medical clothing"–they did provide him

with other treatments and concessions, namely prescribed creams, ointments, a

special detergent with which to wash his clothes, pills, and prescription medication.

(Wallin Dep., Vol. II, at 8.)  It is well established in this Circuit that an inmate's

disagreement with the course of treatment provided does not establish a sufficiently

serious deprivation.  *See Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993).  *See also*

*Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) (inmate's assertion he

needed additional medication, other than that prescribed, was insufficient to establish

a constitutional violation).  Further, the fact that none of the medical departments of

any of the facilities at which Wallin has subsequently been housed have provided

Wallin with "medical clothing" indicates that defendants' course of treatment was not

unreasonable.

     Nonetheless, in his objections Wallin argues that he was not provided with

these other treatments for almost a year, and not until he was transferred to a different

facility.  This latter assertion is not supported by any competent evidence, and is

directly contradicted by both Wallin's deposition testimony as well as a medical

record he attaches to his objection.  (Pl.'s Obj., Ex. 2., March 28, 2002 CDOC

Ambulatory Health Record.)  Further, regarding the timeliness of the treatment,

"[d]elay in medical care only constitutes an Eighth Amendment violation where the

plaintiff can show that the delay resulted in substantial harm." *Sealock v. Colorado*,

218 F.3d 1205, 1210 (10th Cir.2000).  *See also Oxendine*, 241 F.3d at 1276-77

(plaintiff must establish that alleged medical need was sufficiently serious and that

defendants' delay in meeting that need caused him substantial harm).  Wallin has not

14

demonstrated that any delay resulted in substantial harm.  In fact, at his deposition,

he testified that there had not been any real change in his symptoms before or after

when he was at KCCC.  (Wallin Dep., 146, 147 noting that his skin condition"is pretty

much the same.  It gets worser at times, but it's pretty much the same," and "there

really hasn't been any change.  I mean, its still irritation, it's still discomfort".)

In his objections, he asserts that he suffered "increased skin irratation [sic],

skin rashes, increased itching, extreme skin sensitivity and depression."  (Pl.'s Obj.,

at 17.)  However, Wallin supports this assertion, which contradicts his sworn

deposition testimony, with no citation to the record.[9]  In any case, even if his condition

worsened under the treatment provided by defendants, that alone is insufficient to

support a constitutional violation.  *See Jackson v. Clowers*, 83 Fed. Appx. 990, 993

(10th Cir. Dec. 30, 2003) (unpublished table decision) ("[e]ven if the allegedly

inadequate treatments caused Mr. Jackson's skin condition to recur persistently,

these facts would, at best, support a medical malpractice claim").

Accordingly, I find that Wallin has not established that there are genuine issues

of fact precluding entry of summary judgment.  Furthermore, I find that, even if the

CDOC Defendants should have been compelled to provide additional discovery, that

would not have prevented summary judgment on this claim.  First, Wallin does not, in

---

[9]Although the Mimms Affidavit indicates that at some unidentified point in time, Mimms observed some worsening of Wallin's condition, Mimms observes that the worsening resulted from a confiscation of Wallin's "hygiene items," something Wallin has never discussed in his complaint or filings. (Mimms Aff., ¶ 6.)  At any rate, the affidavit fails to create an issue of fact as to whether any delay in treatment caused Wallin substantial harm.

either his motion to compel, objection to the order denying his motion to compel, or objection to Magistrate Judge Watanabe's recommendation, indicate what additional information he was seeking from the CDOC Defendants. Further, there is no reason to believe that the CDOC Defendants alone would have had access to evidence that could have defeated the defendants' motions. In any case, Wallin would independently be aware of the pertinent information concerning his treatment and whether his condition was substantially harmed due to any delay in treatment.[10]

Furthermore, alternate grounds exist for dismissal of Wallin's claim against the CDOC Defendants, namely that he failed to exhaust his administrative remedies with regards to his claim against them as required under the PLRA. By requiring administrative exhaustion, Congress intended to afford "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 525 (2002). Failure to file a grievance against the person a prisoner ultimately seeks to sue may constitute a failure to exhaust administrative remedies under the PLRA. *See Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001) (because he was never mentioned in grievance forms, there was no exhaustion of remedies against prison guard who allegedly failed to intervene in second guard's assault on prisoners). Here, Wallin's grievance forms, which mention only Sloan, provided sufficient information to allow prison officials to address Wallin's complaints about Sloan, and arguably other staff at KCCC; they do not do so

---

[10]Because KCCC is not run by CDOC, it is unlikely the CDOC Defendants would have pertinent factual information regarding Wallin's claims, at least that was not also available from the CCA Defendants.

for any of Wallin's complaints with regards to the CDOC Defendants.

Consequently, I agree with Magistrate Judge Watanabe that Wallin's Eighth Amendment claim should be dismissed against the CCA Defendants and the CDOC Defendants.

B.   State Law Claims

Magistrate Judge Watanabe found that Wallin's state law claims should be dismissed against the CCA Defendants under the CGIA, for failure to provide timely notice.  This was likely a typographical error, as the CDOC Defendants, not the CCA Defendants, moved for dismissal under the CGIA, and I am unaware of any authority allowing application of the CGIA to employees of a private prison.  As a result, I construe the recommendation as recommending dismissal of Wallin's claims two and three against the CDOC Defendants under the CGIA.

Colo. Rev. Stat. § 24-10-109(1) provides:

> Any person claiming to have suffered an injury by a public entity or by an employee thereof while in the course of such employment, whether or not by a willful and wanton act or omission, shall file a written notice as provided in this section within one hundred eighty days after the date of the discovery of the injury, regardless of whether the person then knew all of the elements of a claim or of a cause of action for such injury.

These notice provisions of the CGIA apply when federal courts hear Colorado tort claims under supplemental jurisdiction.  *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003).  "[F]ailure to comply with the 180-day period is an absolute bar to suit."  *Id.* (*quoting Gallagher v. Bd. of Trs. for Univ. of N. Colo.*, 54 P.3d 386, 390-91 (Colo. 2002)).

Magistrate Judge Watanabe found that Wallin filed his first notice pursuant to

17

the CGIA on March 24, 2003, which Wallin does not dispute.  This was almost more than a year after he was first denied access to his clothing in February 2002 and it was more than 180 days after he received notification from Gillespie (on September 11, 2002) that he had exhausted the grievance process.  (Amd. Compl., Ex. 1.)

Nonetheless, Wallin asserts in his objections, as well as in his belated response brief, that "the underlying facts and elements to the possible cause of action were not fully discovered until sometime after the month of September 2002." (Pl.'s Obj., at 30.)  However, the plain language of the statute provides that it is the date the plaintiff discovers the *injury*, and not the elements of his claim, that controls. *See* Colo. Rev. Stat. § 24-10-109(1).  Furthermore, Wallin's conclusory assertion, that he discovered such information "sometime after the month of September 2002," is insufficient to survive a motion for summary judgment.[11]  *See Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003) (quotation omitted) ("[c]onclusory allegations that are unsubstantiated do not create an issue of fact and are insufficient to oppose summary judgment").

This reasoning applies with equal force to the claims against Gillespie, who was a state employee during the relevant time period.  Although Gillespie did not raise the statute, compliance with its notice requirements is a jurisdictional prerequisite to suit. *Abrahamson v. City of Montrose*, 77 P.3d 819, 821 (Colo. Ct.

-------

[11]Wallin does not assert that he could have obtained discoverable information relevant to this defense had his motion to compel, discussed above, been granted. Consequently, Wallin's objection does not prevent me from granting the CDOC Defendants' motion as to these two claims.

18

App.2003).  I therefore may address the issue sua sponte.  *See Rector v. City &*
*County of Denver*, 348 F.3d 935, 942 (10th Cir. 2003).  Consequently, I agree with
Magistrate Judge Watanabe that Wallin's claims two and three must be dismissed as
to the CDOC Defendants and Gillespie.

Magistrate Judge Watanabe also recommended that the state law claims be
dismissed as lacking merit as to the CCA Defendants.  Regarding claim two,
asserting intentional infliction of emotional distress, he found that Wallin had failed to
provide any evidence that the defendants committed outrageous conduct.

In Colorado,"[t]he elements of outrageous conduct are: (1) the defendant(s)
engaged in extreme and outrageous conduct, (2) recklessly or with the intent of
causing the plaintiff severe emotional distress, and (3) causing the plaintiff severe
emotional distress."  *Riske v. King Soopers*, 366 F.3d 1085, 1089 (10th Cir. 2004)
(*quoting Archer v. Farmer Bros. Co.*, 70 P.3d 495, 499 (Colo. Ct. App. 2002)).  Under
the first element, extreme and outrageous conduct is conduct that "goes 'beyond all
possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in
a civilized community.'"  *Id.* (*quoting Rugg v. McCarty*, 476 P.2d 753, 756 (Colo. 1970)).
It is for me to determine, in the first instance, whether reasonable people "could differ
on the outrageousness issue."  *Id.* (*quoting Meiter v. Cavanaugh*, 580 P.2d 399, 401
(Colo. 1978)).

Wallin argues that the defendants knew he was suffering rashes, irritation,
scars, and bleeding because of his skin condition, but they failed to do anything other

than offer him pain pills, and refused to provide his medical clothing.[12]  However, the

undisputed facts establish that defendants provided Wallin with other treatments,

including  prescribed creams, ointments, and prescription medication, as well as a

special detergent to wash his clothes.  Under these circumstances, I agree with

Magistrate Judge Watanabe that reasonable people would have to agree that the

defendants' conduct was not outrageous.

Magistrate Judge Watanabe recommended that Wallin's negligence claim be

dismissed because the defendants "had no duty to Plaintiff relative to his request

from replacement of his property (medical whites) nor could there be any possible

breach of a duty."  (Recommendation, at 21.)  Wallin objects to this determination.

The elements of a negligence claim in Colorado are: (1) the existence of a

legal duty by the defendant to the plaintiff; (2) breach of that duty by the defendant; (3)

injury to the plaintiff; and (4) a sufficient causal relationship between the defendant's

breach and the plaintiff's injuries.  *Connes v. Molalla Trans. Sys., Inc.*, 831 P.2d 1316,

1320 (Colo. 1992).  The initial question is whether the defendant owed a legal duty to

protect the plaintiff against injury, and this question is one of law, to be determined by

the court.  *Id.*  Relevant factors include, "for example, the risk involved, the

foreseeability and likelihood of injury as weighted against the social utility of the

actor's conduct, the magnitude of the burden of guarding against injury or harm, and

the consequences of placing the burden upon the actor."  *Casebolt v. Cowan*, 829

--------

[12]Wallin again asserts, without supporting evidence and in contradiction to his
deposition testimony, that he was not provided any additional treatment at KCCC.
(Pl.'s Obj., at 27.)

P.2d 352, 356 (Colo. 1992). However, the ultimate question of whether a duty should be imposed in a particular case is essentially one of fairness under contemporary standards–whether reasonable persons would recognize a duty and agree that it exists." *Id.* (*quoting Taco Bell, Inc. v. Lannon*, 744 P.2d 43, 46 (Colo. 1987)).

Colorado courts have not explicitly addressed whether prisons and prison employees owe a duty of care to inmates regarding their health needs.  However, in Colorado, the existence of a special relationship may create a duty to take action for the protection of another.  *See English v. Griffith*, 99 P.3d 90, 94 (Colo. Ct. App. 2004). Such relationships "typically involve circumstances in which the defendant either had a treating or supervisory relationship over the [plaintiff] or maintained custodial control over the decedent's environment."  *Id.*  The relationship between Wallin and defendants appears to be such a relationship.  *See Gallegos v. City of Monte Vista*, 976 P.2d 299, 301 (Colo. Ct. App. 1998) (noting sheriff's have duty to receive and safely detain persons duly committed thereto exists for purposes of claim of negligent operation of a jail); *Felger v. Larimer County Bd. of County Comm'rs*, 776 P.2d 1169, 1172 (Colo. Ct. App. 1989) ("[a] sheriff, or any other person having custody of another, is under a general duty to exercise reasonable care to prevent third parties from creating an unreasonable risk of harm to the person in custody"); Restatement (Second) of Torts, § 314A(4) (1965) ("[o]ne who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under" a duty to protect the other from unreasonable risk of physical harm and give  first aid and provide care).

Further, there appears to be general agreement among the state courts that a

jailer incurs a duty to exercise reasonable care in protecting inmates' health and safety.  *See Farmer v. State for Use of Russell*, 79 So.2d 528, 531 (Miss. 1955) ("[w]hen a sheriff, by virtue of his office, has arrested and imprisoned a human being, he is bound to exercise ordinary and reasonable care, under the circumstances of each particular case, for the preservation of his life and health"); *Dezort v. Village of Hinsdale*, 342 N.E.2d 468, 472-73 (Ill. Ct. App. 1976) ("[w]e conclude that the better reasoning supports the rule that the jailer owes a general duty of due care to his prisoner"); *Iglesias v. Wells*, 441 N.E.2d 1017, 1019 (Ind. Ct. App. 1982) ("[w]e have recognized that a sheriff has a duty to exercise reasonable care to preserve his prisoner's health"); *Heumphreus v. State*, 334 N.E.2d 757, 76 (Iowa 1983) ("[a]t common law a jailer has a duty to exercise reasonable diligence with reference to the care of injured, ill, or diseased inmates"); *Medley v. North Carolina Dept. of Correction*, 412 S.E.2d 654, 659 (N.C. 1992) (state department of corrections has nondelegable duty to provide adequate medical care to inmates in its custody); *Murdock v. City of Keene*, 623 A.2d 755, 756 (N.H. 1993) ("[b]y virtue of their incarceration, prisoners are unable to procure for themselves the essentials of life, such as food and medical care, and are dependant upon their jailers for all forms of assistance"); *Kagan v. State of New York*, 646 N.Y.S.2d 336, 342 (N.Y.A.D. 2 Dept. 1996) (state owes a duty to provide medical care and treatment to its prisoners); *Clemets v. Heston* , 485 N.E.2d 287, 292 (Ohio App. 1985) (a jailer owes a duty to those in his custody to protect them from harm by doing what is "reasonable and ordinary for the health, care and well-being of the prisoner"); *Shea v. City of Spokane*, 562 P.2d 264, 241 (Wash. App. 1977) (city defendant operating jail had duty to keep

prisoner in "health and safety" based on special relationship); *Brownelli v. McCaughtry,* 514 N.W.2d 48, 50 (Wis. Ct. App. 1994) (recognizing a duty of jailers to " exercise ordinary and reasonable care for the preservation of their prisoner[s'] health and life under the circumstances of the particular case"). *See also Giron v. Corrections Corp. of Am.,* 191 F.3d 1281, 1286 (10th Cir. 1999) (noting jury's special verdict on negligence "must be read as rejecting the claim that CCA was negligent in failing to prevent incident, that it had breached its duty to exercise reasonable and ordinary care for the protection of the safety and bodily integrity of the person in custody); *McCormick v. City of Wildwood*, 439 F. Supp. 769, 776 (D.N.J. 1977) (jailer has legal duty to provide appropriate medical care to those in his custody). Given the weight of authority, I find that Colorado would likely recognize that the special relationship between Wallin and his "jailers" gives rise to a duty to protect his health.[13]

The CCA Defendants, however, framed the issue, not as whether they had a duty to protect Wallin's health, but as whether they had a duty to return Wallin's clothing. Such a framing unreasonably narrows the analysis of whether a duty was owed. The specific act in question–the refusal to provide medical clothing–is more appropriately analyzed under the breach of duty prong; i.e., did the CCA Defendants breach a legal duty to protect Wallin's health by failing to provide him with medical

---

[13]Wallin argues that the applicable regulations give rise to a duty of care, but fails to provide the applicable regulations. I do note that the regulations in force *now* note an "intent" of CDOC to assure that offenders have access to medical services that maintain "basic health." Colo. Dept. Corrections, Admin. Reg. 700-02, at 1. However, Wallin does not address the applicability of the regulations to private prisons. At any rate, I need not reach this issue because my analysis determines that the CCA Defendants have not demonstrated the absence of a duty.

clothing.

The CCA Defendants do not address this issue, but merely assert the blanket statement, unsupported by authority or analysis, that Wallin "can point to no duty owed by any of the Defendants." (CCA Defs.' Mot. Summ. J., at 26.)  Accordingly, they appear to assume that they can prevail, as would be the case in a *factual* matter in a Rule 56 motion, by pointing out the absence of a duty, and then requiring Wallin to demonstrate why summary judgment should not be granted.  However, "whether a defendant owes a duty of care to a plaintiff is a question of law," *Jones v. United States*, 91 F.3d 623, 624 (3d Cir. 1996), and Defendants, as moving party, bear the burden of demonstrating that they are entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In this case, as presented to me, such burden entails demonstrating that they owed Wallin no duty of care, and they have not done so.  This is not to say that each (or any) of the CCA Defendants necessarily had a legal duty as "jailers;" merely that they have not met their burden under Fed. R. Civ. P. 56.

The CCA Defendants also argue that, to the extent Wallin is asserting claims for against the medical professionals, presumably Hill and Wederski, the claims must be dismissed for failure to file a certificate of review under Colo. Rev. Stat. § 13-20-602.  The statute provides:

> [i]n every action for damages or indemnity based upon the alleged professional negligence of . . . a licensed professional, the plaintiff's or complainant's attorney shall file with the court a certificate of review for each . . .licensed professional named as a party, as specified in subsection (3) of this section, within sixty days after the service of the complaint, counterclaim, or cross claim against such person unless the court determines that a longer period is necessary for good cause shown.

Colo. Rev. Stat. § 13-20-602(1)(a).  Failure to file the certificate of review shall result in

dismissal.  Colo. Rev. Stat. § 13-20-602(4).  Wallin does not deny he failed to file any

certificates for review, but responds that he is not asserting a claim for professional

negligence, but "mere" negligence.

Defendants provide no discussion, nor authority, for their argument that § 13-

20-602 applies in circumstances such as these, where a plaintiff's claims against

medical professionals appear to rely primarily on allegations that they failed to take

reasonable administrative efforts to ensure that the plaintiff received a particular

treatment, rather than, for instance, allegations that the professionals misdiagnosed

his condition.[14]    Because the scope of § 13-20-602 under these circumstances

appears to be a novel and complex issue under Colorado law, and because I find

below that the negligence claim against the other defendants is more properly

decided by the Colorado courts, I will not decide this issue but will decline to exercise

jurisdiction over this claim.  *See Anglemyer v. Hanilton County Hosp.*, 58 F.3d 533,

541 (10th Cir. 1995).

The CCA Defendants also argue that Wallin's state law claims must be

dismissed for failure to comply with Colo. Rev. Stat. § 13-17.5-102.3(1), which

provides that "[n]o inmate shall bring a civil action b03-cv-00280ased upon prison

conditions under any statute or constitutional provision until all available

administrative remedies have been exhausted in a timely fashion by the entity

operating the detaining facility and inmate."  However, by its plain language, this

_____

[14]Additionally, Defendants do not establish it as undisputed that both Hill and
Wederski are licensed.

25

provision applies to claims, unlike Wallin's claims two and three, brought pursuant to a statute or constitutional provision.[15]

Magistrate Judge Watanabe alternatively recommended that, in lieu of dismissal, I refuse to exercise supplemental jurisdiction over Wallin's state claims.

> A district court has discretion whether to exercise supplemental jurisdiction over state law claims once the federal question has been dismissed. 28 U.S.C. § 1367(c). 'In making its determination, the district court should take into account generally accepted principles of judicial economy, convenience, and fairness to the litigants,'. . . [as well as] the particular circumstances of the case including the nature and extent of the pretrial proceedings.

*Olcott v. Delaware Flood Co.* 76 F.3d 1538, 1550 (10th Cir. 1996) (*quoting Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1284 (3d Cir.1993)).  *See also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("[c]ertainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well").

Wallin argues that I should exercise jurisdiction over this claim because it will otherwise be time-barred in state court.  However, the period of limitations for a supplemental claim is generally tolled while the claim is pending in federal court. *See* 28 U.S.C. § 1367(d).  *See also Dalal v. Alliant Techsystems, Inc.*, 934 P.2d 830, 834 (Colo. Ct. App. 1996).  Consequently, dismissal without prejudice would not unfairly deprive Wallin of the opportunity to seek relief for his claim.

There have been substantial pretrial proceedings in this case, and to at least some extent, the factors weigh in favor of exercising supplemental jurisdiction.

---

[15]Magistrate Judge Watanabe also recommended that Wallin's conversion claim be dismissed.  However, Wallin has asserted no conversion claim in this case.

However, because I will dismiss most of Wallin's claims with prejudice, the issues will be considerably narrowed for subsequent proceedings in state court.  More importantly, because Wallin's negligence claim involves complex and novel issues of state law, namely the scope of a "jailer's" duty with regards to an inmate's health, whether that duty attaches to employees, agents, etc., as well as the scope of § 13-20-602, the Colorado state courts are the more appropriate forum for determination of his remaining claim. *See Anglemyer*, 58 F.3d at 541.

Accordingly, it is ordered:

1.     The recommendation issued January 20, 2005, by Magistrate Judge Watanabe is accepted in part and modified in part, as discussed herein.

2.     Plaintiff's objections to the recommendation, filed March 15, 2005, are overruled.

3.     Defendants Bair, Brill, Hill, Saffer, Sloan, and Wederski's motion for summary judgment, filed October 25, 2004 (Docket # 181), is granted.

4.     Defendants CDOC, Bongirno, and Ortiz' motion for summary judgment, filed November 12, 2004 (Docket # 209) is granted.

5.     Defendant Gillespie's motion for summary judgment, filed December 13, 2004 (Docket # 237), is granted.

6.     Plaintiff's claim one and two are dismissed with prejudice as to all defendants.

7.     Plaintiff's claim three is dismissed with prejudice as to defendants Bongirno, CDOC, Hill, and Ortiz.

8.     Plaintiff's claim three is dismissed without prejudice as to defendants

27

Bair, Brill, Doe, Hill, Saffer, Sloan, and Wederski.

9.     Plaintiff's December 10, 2004 motion to strike (Docket # 234), October

28, 2004 motion for reconsideration (Docket # 197), November 26, 2004

motions for an extension of time (Docket #s 224, 225, 226, and 227),

and motion to compel (Docket # 242) are denied.

10.    Plaintiff's objections filed under Docket #s 188, 192, 193, 195, 217, 234,

and 273 are overruled.

DATED at Denver, Colorado, on August 9, 2005.

BY THE COURT:


/s/ Walker D. Miller
United States District Judge